DIRECTOR GENERAL OF RAILROADS AND LONG DOCK COMPANY, PROSECUTORS, v. STATE BOARD OF TAXES AND ASSESSMENT ET AL., RESPONDENTS.

Argued February 28, 1919—Decided July 28, 1919.

The illegal excess of local tax rate that was adjudged in the case of *Garrison* v. *Jersey City*, 92 *N. J. L.* 624, *held*, to affect the state tax rates on main stem and second-class railroad property imposed during the year 1918 so as to require corresponding revision of those rates.

On *certiorari*.

Before Justices PARKER and MINTURN.

For the prosecutors, *Collins & Corbin* (*Robert J. Bain* on the brief).

For the respondents, *Thomas F. McCran*, attorney-general.

The opinion of the court was delivered by

PARKER, J.   The attack is upon an adjudication of the state board of taxes and assessment, refusing to modify the amount of taxes assessed against the prosecutors and due, under the law, between November 1st, 1918, and February 1st, 1919, but payable in installments. *Comp. Stat.*, *pp.* 5268, 5269, *pl.* 454, being section 10 of the Railroad Tax law of 1888. *Pamph. L.*, *p.* 269. The modification was applied for on the ground that so far as second-class property, so called, assessable at local rates, was concerned, the local rates reported to the state board had been subsequently reduced after being held invalid by the decision of this court in *Garrison* v. *Jersey City*, 92 *N. J. L.* 624, and that the tax on such second-class property should be correspondingly reduced by the board. As to first-class or main-stem property, the claim was that such local reductions, if adopted, materially

modified the average rate collectible under *Pamph. L.* 1906, p. 121; *Comp. Stat., p.* 5279, and that the prosecutors and other railroads affected were entitled to a reduction resulting from a new calculation of the average rate with the reduced local rates as factors. The state board refused both applications and reaffirmed its original impositions, and this writ was thereupon allowed.

With respect to second-class property the case seems quite clear. By section 9 of the act of 1888 (*Comp. Stat., p.* 5268) "each company shall pay * * * a tax at the local rate as fixed and assessed for county and municipal purposes upon other property in each taxing district," on its second-class property as valued and assessed by the board. Necessarily, this means the local rate as lawfully fixed and assessed against other property. It would shock the sense of justice to say that when an illegal rate uniformly affecting individual and second-class railroad property, had been set aside in the courts and a revision made resulting in a lower rate, individuals should have the advantage of that rate and the railroad be denied it, mainly because, as apparently claimed in this case, the official reports from local authorities to the state board had gone forward, and the dates specified in the statute for their transmission to that board had gone by. As well might it be said that if the local officials should fail to send any report in due time, there could be no tax assessed against the railroads. The dates are mainly a time table and not statutes of limitation. And if, for example, a wholly legal tax were imposed locally and sent forward to the board, and later set aside, the railroad would not be liable for it on second-class property. The judgment of this court, in the Tumulty case and on the Garrison case, affected the entire Jersey City assessment, and removed the very foundation of the assessment for second-class property, leaving it to depend on the empty certificate of the local assessor, of a rate which he later certified had been overruled by the court. The assessment brought up, so far as it relates to second-class property, must be set aside.

The "average rate" portion of the tax is more troublesome, but is controlled, in our judgment, by similar reasoning. The main difficulty arises out of the recent legislation relating to municipal budgets, fiscal years and taxation. One general aim of the whole series of acts was to make a uniform fiscal year for all municipalities, and to make it identical with the calendar year. To attain this object, the legislature passed an amendment of the Fiscal Year act of 1908, page 560, which will be found in *Pamph. L.* 1918, *p.* 901, and which was approved March 4th, 1918, and went into effect immediately, the effect of which is to provide in all cases where the municipal fiscal year ended under the former law before December 31st, 1918, that the period between the end of the pre-existing fiscal year (in Jersey City, November 30th) and December 31st, should constitute what may be called a *quasi,* or artificial fiscal year, for which a special budget and tax rate should be made up, and on January 1st, 1919, a new fiscal year should begin for every municipality. Perhaps municipalities, whose fiscal year ended before March 4th, were unaffected, if there are any such; but this is not material now. The argument for the state is, that under the Railroad Tax law, the "average rate" tax is imposed for a year, and for no less period; and that by the very language of sections 10 and 11 of the supplement of 1918 to that law, the tax "for" 1918, and proceedings respecting the same, shall be "taken, completed and availed of as now provided by law;" *ergo,* it is argued, the rate in question is really too low, as it should be based on a year's local budget and on no less term. The argument proves too much; for the Jersey City "year" would begin on December 1st, 1918, and end on November 30th, 1919, thus using eleven months of 1919, while under any view of the statutes the railroad tax rate assessed in 1919 would have to be based on a local rate for the calendar year 1919 as a municipal fiscal year and so make double taxation for the eleven-month period. But we think the average rate in question was not intended to be based on a local year except when the local year is also a calendar year. The Fiscal Year act (chapter 238) went into effect, as we have said, March 4th,

1918; the supplement to the Railroad act, chapter 284, was approved March 5th, and was to take effect January 1st, 1919; consequently, when it speaks of assessing and collecting taxes "as now provided by law," it does so in contemplation of the Fiscal Year act previously passed and in full force. So, that when it is required, as by the "Average Rate act" of 1906 that the local assessors certify by October 1st to the state board the local rate of taxation "for the said year," a proper construction of the Fiscal Year act requires that the word "year" be read for present purposes to mean "remainder of the calendar year." This is, in effect, what was held in the Garrison case. It follows that the assessor properly reported a rate based, for Jersey City, which we take as a type, on one month's budget; and similarly as to other municipalities according to the intervals between the end of the old fiscal year and December 31st.

It is further argued that the rate first certified (for Jersey City, $17.30 per $1,000) should stand, because by the railroad tax supplement of 1918 this same rate must be repeated in assessing the railroads for 1919, that it is applicable to the whole year and manifestly insufficient. But this is simply not so. It is true that the railroad tax supplement of 1918 apparently contains an odd hiatus respecting a 1919 rate. A careful reading of that supplement will show that the legislative plan was to permit the assessing machinery to work during 1918 on the old plan, and to eventuate in a tax that would be a lien, as usual, on November 1st, 1918, be certified to the comptroller December 1st, 1918, and payable not later than February 1st, 1919, with installment privilege. That is the tax now under consideration, which the supplement calls the tax "for" 1918, although our courts appear to have declined to assign it to any specific period of time. *State* v. *United New Jersey Railroad*, 76 *N. J. L.* 72; *affirmed*, 71 *Atl. Rep.* 228. As to 1919, the act says, in effect (section 10), that the valuations of 1918 shall be adopted for a working basis, the assessment of taxes shall be made on January 15th, 1919, and shall be considered as finally reviewed and determined on that date, and proceedings for collection taken

thereon during 1919 as prescribed in the supplement. The attorney-general argues that the rate for this tax must be the same as that adopted in 1918, but the supplement does not say so, and, in fact, says nothing about it. Suspicion that this point was overlooked is rather confirmed by chapter 3 of the laws of 1919, which prescribes that the rate shall be based on the tax rates for 1919. These, of course, would normally not be ascertained before March 10th, 1919 (*Pamph. L.* 1918, *pp.* 867, 868, § 508, *clause* 22) ;. so, chapter 3 allows the tax of 1919 to be certified to the comptroller as late as April 15th. For 1920 the ordinary machinery of the act of 1918, page 1078, sections 1 to 8, applies, the preliminaries occurring during 1919 and the tax being certified to the comptroller by March 1st, 1920. Section 8. This makes an intelligible scheme, and it will be seen that the railroads are thereby subjected to an average rate for taxes "for" 1918, 1919 and 1920, based strictly on local rates and valuations and on identical periods of time with private taxpayers. That one of these periods is less than a year does no harm, and the condition is manifestly indicated by the Fiscal Year act.

Viewing the case in this light, there is no substantial difference between the rights of the railroads touching second-class property and touching main stem. In each case they have been assessed to an illegal amount; in one case directly by imposition of the illegal local rate on second-class property; in the other, indirectly, by its use as a factor in computation. The assessments and proceedings must be set aside, to the end that new assessments be made, based on the lawful local rates of the several municipalities.

The same result is reached in the cases of No. 246, Lehigh Valley Railroad Co.; No. 247, Central Railroad Co. of New Jersey; No. 248, Morris and Essex Railroad Co.; No. 249, New Jersey Junction Railroad Co.; No. 250, New York Bay Railroad Co.